Francis's Estate.

Argued January 14, 1930. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, SADLER and SCHAFFER, JJ.

*M. Luther Nicholas,* with him *Wm. H. Ridley,* for appellant.—The alleged will offered for probate was not executed according to law in accord with the provisions of the Wills Act of 1917: Long v. Zook, 13 Pa. 402; Grabill v. Barr, 5 Pa. 441; Robinson v. Robinson, 203 Pa. 400.

There was lack of capacity and also undue influence: Lawrence's Est., 286 Pa. 58; Hughes's Est., 286 Pa. 466; Hughes v. Freeley, 294 Pa. 391; Buechley's Est., 278 Pa. 221; Goss's Est., 274 Pa. 278; Hess v. Colliery Co., 255 Pa. 78; Stevenson v. Coal Co., 201 Pa. 112.

*Mervyn R. Turk,* for appellees.—The will was validly executed: Novicki v. O'Mara, 280 Pa. 411; Girard Trust Co. v. Page, 282 Pa. 174; Carmello's Est., 289 Pa. 554.

The want of testamentary capacity must be established in a positive and not a doubtful manner: Grubbs v. McDonald, 91 Pa. 236; Palmer's Est., 219 Pa. 303, 310; Novicki v. O'Mara, 280 Pa. 411; Snyder's Est., 279 Pa. 63; Guarantee Trust & S. D. Co. v. Walker, 240 Pa. 575.

OPINION BY MR. JUSTICE FRAZER, March 17, 1930:

The will of Meredith Francis, whose residence was in the City of Chester, being offered for probate, a caveat was filed by appellant alleging (1) invalid execution under the Wills Act of June 7, 1917, P. L. 403, (2) that it was obtained by undue influence, and (3) that deceased did not possess sufficient mental capacity to execute a valid will. The register dismissed the proceedings and admitted the writing to probate, and, on appeal, the orphans' court refused to grant an issue to the common pleas to try the questions of fact attempted to be raised, sustained the decision of the register, dismissed the appeal and subsequently overruled exceptions filed to its decree. This appeal followed.

It appears testator, having been seriously ill for a considerable time before his death and the death of his wife, which occurred seventeen days previous to his, requested that a lawyer be procured to prepare his will, and, in response to that request, Mervyn R. Turk, a practicing attorney of the bar of Delaware County, was called and visited testator's residence for that purpose. Upon being interrogated by the attorney, testator informed the attorney he desired to leave his entire property to Idella Goldsborough, whom he designated and identified as his niece, though she was not, in fact, such relative. Pursuant to instructions, the attorney prepared the will and read it over to testator, who approved it and suggested that the attorney attach the former's name to the paper because his "hand shook." Testator's name was then written by the attorney in the presence of the former, leaving a space between his first and last name, writing above the space the word "his" and, below, the word "mark," and the will was then handed to testator, who thereupon made his mark in the space designated. At the suggestion of the attorney, the will was then witnessed in the presence of testator by the attorney and another.

We are of opinion the will was properly executed under section 3 of the Wills Act of 1917, P. L. 403, which provides that "If the testator be unable to sign his name, for any reason other than the extremity of his last sickness, a will to which his name is subscribed in his presence, by his direction and authority, and to which he makes his mark or cross, unless unable so to do,—in which case the mark or cross shall not be required—shall be as valid as though he had signed his name thereto; Provided, That such will be proved by the oaths or affirmations of two or more competent witnesses."

While the evidence does not disclose express direction and authority given by testator to sign his name to the will, it is not necessary that such explicit direction should be given. Authority may be implied from the

circumstances. Here it appears that, after an unsuc-
cessful effort by testator to sign the will, his name was
written by the attorney pursuant to his suggestion that
such signature would be proper if followed by testa-
tor's signature by his mark. Testator consented to that
and immediately thereafter placed his mark on the pa-
per, this being followed by the signatures of the wit-
nesses, all being done in testator's presence. This was
sufficient execution under Girard Trust Co. v. Page, 282
Pa. 174, 176, 177, and Hughes's Est., 286 Pa. 466, 470,
which hold that authority may be inferred from the fact
that testator saw the name written and then signified
his approval of the act by placing his mark on the paper.

As to the alleged want of testamentary capacity, it ap-
pears that while testator, owing to his physical condi-
tion, experienced difficulty in talking and most of the
information for preparing the will was obtained from
him by asking questions, he succeeded in making defi-
nitely known his desires with reference to the disposi-
tion of his property, and, after the will had been written,
it was read over to and approved by him and executed
in the presence of the attorney, and the other witness to
the will, both of whom testified testator knew what he
was doing and was mentally competent to make a will.
This was corroborated by testimony of testator's physi-
cian, who had visited him that day, to the effect that
testator's mental condition was normal and was the
same that morning as it was twenty years previous, and
that he possessed full control of his faculties, mental
and physical. Contestant produced no evidence to the
contrary justifying a conclusion that testator did not
have sufficient mental capacity to make a valid disposi-
tion of his property.

The contention that the will was executed under un-
due influence exercised by the beneficiary is equally
without sustaining evidence. Idella Goldsborough, the
sole beneficiary under the will, had been reared by tes-
tator as one of his family. The only part she took in

connection with the execution of the will was when she was called into the room by the attorney for identification and to establish without doubt the person intended by testator as his devisee and to eliminate any question which might be raised by the fact that she was referred to as testator's niece, when, in fact, she was not his niece. She took no part in the discussion relating to the will, was in the room not more than three minutes, and we fail to find in the record evidence of the slightest character tending to indicate that she exercised an improper influence over testator, either at the time the will was signed or at any previous time.

The decree of the court below is affirmed at appellant's costs.